**UNITED SAW, FILE AND STEEL PRODUCTS WORKERS OF AMERICA, FEDERAL LABOR UNION NO. 22254, AFL–CIO by Joseph Adair, President and Trustee ad litem**

v.

**H. K. PORTER COMPANY, DISSTON DIVISION.**

Civ. A. No. 27077.

United States District Court
E. D. Pennsylvania.

Aug. 4, 1960.

Richard H. Markowitz, Wilderman & Markowitz, Philadelphia, Pa., for plaintiff.

Miles W. Kirkpatrick, Philadelphia, Pa., Blaine E. Capehart, Camden, N. J., for defendant.

LORD, District Judge.

Plaintiff Union seeks to compel the defendant Company to proceed to arbitration under a collective bargaining agreement. The plaintiff *Union* is the United Saw, File and Steel Products Workers of America, Federal Labor Union No. 22254, AFL–CIO, an unincorporated association located in Philadelphia, Pennsylvania, by Joseph Adair, President and trustee ad litem. The defendant *Company* is H. K. Porter Company, Disston Division, a corporation organized and chartered under the laws of the state of Delaware, having an office and doing business at its Tacony plant in Philadelphia.

This motion for summary judgment is of course addressed to the pleadings only,

i. e. the complaint and answer. This motion, accordingly, in no way involves the merits—and there is before the Court the bare question of whether the Union is entitled to the reference to arbitration as a matter of law.

Plaintiff asks the Court to order defendant to submit two sets or groups of disputes (which plaintiff—despite defendant's vigorous denials—insists are grievances) to arbitration procedure.

Defendant says that summary judgment is inappropriate, since there are genuine issues as to material facts. Plaintiff says that such submission to arbitration will be entirely in accord with the grievance procedure outlined in Sections III and IV of the collective bargaining agreement in existence between these parties. Defendant argues that these disputes are not arbitrable under the contract. Furthermore, defendant says that arbitrability is a matter for the Court; and that the Court will need detailed consideration of the contractual limitations upon arbitration. Thus the question is not one to be decided summarily, it says.

Certain matters and circumstances appear uncontradicted from the pleadings, and form a basis for the Court's consideration of this motion.

(1) Jurisdiction is conferred on this Court by § 301, Labor Management Relations Act of 1947, 29 U.S.C.A. § 185.

(2) Plaintiff Union is the collective bargaining representative of all employees of the defendant at its Disston Division, Tacony plant, Philadelphia 35, Pennsylvania, except certain classes of employees specifically excluded by the parties' collective bargaining agreement and not here involved.

(3) The defendant Company is engaged in an industry affecting commerce within the meaning of § 2(7) of the National Labor Relations Act, 61 Stat. 136, 29 U.S.C.A. § 151 et seq.

(4) The plaintiff and defendant are parties to a collective bargaining Agreement dated September 15, 1957 and extended by a Supplemental Agreement dated September 15, 1958.

(5) In February of 1959, the defendant announced that it intended to move a large part of its production facilities from its Tacony plant to a plant in Danville, Virginia.

(6) Subsequent to the Company's announcement of its intent to move its plant, the Union and the Company had discussions of severance pay for employees affected and the pension rights of employees who would be laid off as a result of the move. No agreement was reached on these subjects.

At about this juncture, the pleaders part company. The Union, as indicated, characterizes the subject of the discussions as grievances, and the discussions as "grievance meetings"—characterizations which are vigorously disclaimed by the Company.

Technically, it is true that since the present motion is directed solely to the pleadings, the Union admits the truth of the Company's well-pleaded allegations in its Answer. See 6 Moore's Fed.Pract. 2058, 2064 (2d ed. 1953). As will be made more apparent later, however, the present case is not deemed to be one for technical treatment. The chief differences between the parties, in any event, seem to be as to the legal effect of the subsequent transactions.

On July 30, 1959 the Union wrote the Company asking that the grievances relating to the described subjects be referred to the impartial chairman designated in §§ III and IV of the collective bargaining agreement. Disclaiming the designation of "grievances" the Company admits receiving the letter but says, however, that the Union letter

"* * * does not suggest any relationship between the issue of severance pay and the collective bargaining agreement. It speaks of the failure of the parties to reach some understanding regarding what the Company was going to do to assist the employees affected by the Danville Move. The Union, in its July-

30, 1959 letter, also speaks with complete vagueness about a difference between the Company and the Union with respect to Section XX of the Agreement (Pensions) as it related to employees affected by the Company's move to Danville * * "

On August 10, 1959, the Company replied to the Union's July 30, 1959 letter stating in essence that the matters referred to therein were not arbitrable.

Ten days later, 127 individual members of the Union—by letters of August 20, 1959—wrote

> "complaining of the Company's misinterpretation, misapplication and violation of § XX of the collective bargaining Agreement, relating to Pensions and to the Company's refusal to grant or to discuss the counter proposal submitted by the plaintiff to the company on an assistance plan for employees affected by the Company's move to Danville, Virginia."

Defendant concedes that it received these August 20 communications, but denies that they constituted grievances and, of course, does not admit the plaintiff's assertions as to the merits of the employees' complaints.

The defendant takes the narrative one step beyond the plaintiff's version. It is defendant's assertion that the Union thereafter withdrew its demand for severance pay. Defendant says:

> "On August 24, 1959 the parties began negotiations on a new collective bargaining Agreement. At that time plaintiff presented to defendant a written proposal which contained demands for (1) a severance pay plan and (2) improved pension benefits * * * After many negotiation sessions between the parties a new contract was agreed upon on September 15, 1959, in which the Company agreed to a change in pension benefits and the Union withdrew its severance pay demand * * * "

It will serve no purpose here to go beyond the bare recital of the defendant's

foregoing version of those subsequent negotiations. Comment on the legal effect of such occurrences will be reserved for a later part of this opinion.

The plaintiff's position is that the foregoing sequence of events, according to its interpretation, amounts to a violation of the collective bargaining agreement by force of defendant's refusal to process and arbitrate the described grievances. Accordingly, plaintiff asks this Court to order defendant to abide by its agreement and, accordingly, accept and process through arbitration these matters which the plaintiff has described as grievances.

Defendant's position, as the foregoing suggests, is simply that severance pay, and the pension rights, of employees laid off as a result of the plant move to Virginia are simply matters not comprehended by the grievance and arbitration provisions of the contract. They point out, for instance, that in § IV B that Agreement states that "neither the Company nor the Union agree to submit to arbitration broad labor policies." These matters, defendant says, concern broad labor policies.

Another section which defendant urges as controlling in its favor is § XX B of the agreement providing that "the only pension problems subject to arbitration" are ones involving "eligibility within the terms" of the Pension Plan set forth in the collective bargaining agreement.

Analysis of the legal effect of the foregoing facts and contentions will be made in the order of defendant's principal grounds of opposition to the motion.

### I. Are there Genuine Issues as to Material Facts?

If there exist genuine issues as to material facts, the motion for summary judgment cannot, of course, be granted. It presently appears, however, that there is no real disagreement as to the transactions between the parties, but only as to the legal effect of those dealings.

A possible exception is the defendant's contention that

" *  *  *  After many negotiation sessions between the parties a new contract was agreed upon on September 15, 1959 in which the Company agreed to a change in pension benefits and the Union withdrew its severance pay demand  *  *  *"

The essence of that quoted statement appears as par. 13 of Defendant's Fifth Defense and may be taken technically as admitted by plaintiff's motion. As a matter of law, however, the Court determines that the pleaded withdrawal of severance pay demand would not work an estoppel as to plaintiff's alleged grievances involving severance pay on the authority of United Steelworkers of America v. Warrior and Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; see Whittaker, J., dissenting 80 S.Ct. 1354, 1356. In that case, arbitration was directed by the Court even though, as the dissenting opinion cited shows, there had been unsuccessful subsequent efforts to negotiate the very concession involved in the grievance.

II. The Contention that Arbitrability is for the Court to Determine and in Making its Determination the Court Must of Necessity Consider the Contract.

Defendant's essential point, of course, is that proper consideration of the contract and so much of its background as will make possible its proper construction is no matter for summary judgment. The recommended analysis-in-depth, so to speak, is a matter more readily to be discussed in the third branch of this discussion rather than at present. On the general topic, however, both sides have quoted in their briefs from the opinion of this Court in Cuneo Eastern Press, Inc. of Pa. v. Bookbinders and Bindery Women's Union, Local No. 2, D.C.E.D.Pa. 1959, 176 F.Supp. 956. The quoted passages are generalizations, culled from collected authorities, to the effect that the Court must determine arbitrability in the first instance, and that arbitration is favored in labor disputes. The Court affirms that decision.

III. Are these Grievances Arbitrable?

Defendant's final point, that the grievances are not arbitrable under the contract, brings one to the crux and essence of this matter.

Three cases decided during the pendency of this motion were recognized by counsel as being likely to determine this motion, as shown by the fact that both sides immediately sought and received leave to file supplemental briefs on the three decisions handed down June 20, 1960: United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise W. & Co. Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. The Warrior case is the only one deemed to have direct bearing on the present motion, but some sense of the impact of these cases may be conveyed by the following comment in Law Week for July 12, 1960:

"Three years ago, in Textile Workers [of America] v. Lincoln Mills, 353 U.S. 448 [77 S.Ct. 912, 1 L.Ed.2d 972] 25 LW 4287, the Supreme Court declared that the federal courts should formulate the law to be applied in enforcing arbitration clauses in collective bargaining agreements. This year, the Court took long steps forward in the implementation of this doctrine. In a series of three opinions, the Court made it clear that the judiciary was to play a very minor role in the arbitral process; the major role is to be played by the arbitrators selected by the parties."

The Warrior case bears quite squarely on the present point, and permits no option other than granting plaintiff's motion. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

The Warrior company maintains a terminal at Chicasaw, Alabama, where it

performs maintenance and repair work on its barges. The employees at that terminal constituted a bargaining unit, represented by the petitioning United Steelworkers, and were covered by a collective bargaining contract negotiated by the petitioner union. Between 1956 and 1958 the terminal laid off about half of the employees of the bargaining unit. That reduction was due in part to Warrior's contracting-out certain maintenance work, formerly done by its own employees, to other companies.

On behalf of a group of terminal employees the petitioner presented a grievance protesting the Company's actions in contracting-out that work, alleged to have the effect of a partial lockout. The opinion continues:

"The collective agreement had both a 'no strike' and a 'no lockout' provision. It also had a grievance procedure which provided in relevant part as follows

" * * * matters which are strictly a function of management shall not be subject to arbitration under this section."

The further provisions of the collective bargaining agreement, providing for references to arbitration if the matter cannot be settled at lower echelons, are prefaced by the following language:

"Should differences arise between the Company and the Union or its members employed by the Company as to the meaning and application of the provisions of this Agreement, or should any local trouble of any kind arise. * * * "

When the grievance was not settled, and Warrior refused arbitration, this suit was commenced by the union to compel it.

The District Court granted respondent's motion to dismiss the complaint, 168 F.Supp. 702, 705, on the principal ground that

"the contracting out of repair and maintenance work * * * is strictly a function of management

not limited in any respect by the labor agreement involved here."

The Court of Appeals for the Fifth Circuit affirmed, the majority agreeing that the matter was an excluded "function of management." 269 F.2d 633, 635.

The opinion of the Court by Mr. Justice Douglas commences by restating the principles of the Lincoln Mills case approving federal enforcement of the provision for arbitration of grievances in a collective bargaining agreement. Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.

The language of Mr. Justice Douglas makes clear that all doubts are to be resolved in favor of arbitrability. Arbitration would be compelled unless it can be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute.

The mandate of this decision of the United States Supreme Court seems clear as applied to the present case. The contract involved in Warrior specified as not arbitrable matters "strictly a function of management". In the instant case "broad labor policies" are likewise excluded. If contracting work to outside plants was not a function of management, it seems evident that the present disputes are not exempt from arbitration as "broad labor policies."

The provisions of the respective contracts as to that which is arbitrable in Warrior and the Disston collective bargaining agreement are virtually identical.

In the instant case, the arbitration clause is quite broad, and the quoted clause and another reference to non-arbitrable matters are both quite vague. The Warrior opinion is replete with language which requires arbitration in such case, of which the following passage is an example:

" * * * In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail,

particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad * * " Ibid., 80 S.Ct. 1354.

For the foregoing reasons, it is the ruling of this Court that the plaintiff is entitled to Judgment on its motion for summary judgment and an appropriate order may be submitted.