**H. K. PORTER COMPANY, Inc.**

v.

**UNITED SAW, FILE AND STEEL PRODUCTS WORKERS OF AMERICA, FEDERAL LABOR UNION NO. 22254, AFL-CIO.**

Civ. A. No. 32367.

United States District Court
E. D. Pennsylvania.
May 10, 1963.

**162**

Pepper, Hamilton & Scheetz, Philadelphia, Pa., for plaintiff.

Wilderman, Markowitz & Kirschner, Philadelphia, Pa., for defendant.

JOHN W. LORD, Jr., District Judge.

Arbitration of grievances had been ordered by this Court as the outcome of Civil Action No. 27077, captioned United Saw, File and Steel Products Workers of America, Federal Labor Union No. 22254, AFL–CIO by Joseph Adair, President and Trustee ad litem v. H. K. Porter Company, Disston Division, 190 F.Supp. 407 (E.D.Pa.1960). Since there will be repeated references to the opinion in that case, the following abbreviated caption will be used: United Saw Workers v. H. K. Porter.

Following the arbitration thus ordered, plaintiff brought the present action seeking to have vacated and declared void a part of the arbitrator's award. Defendant filed an answer and counterclaim asking enforcement of the arbitrator's award. Conceding that no questions of fact are involved, both parties have moved for summary judgment.

Judicial notice is taken of the files and prior proceedings of this Court in this matter. Further in the interest of brevity, the heretofore cited opinion of this Court in pertinent part is herein incorporated by reference: United Saw Workers v. H. K. Porter, 190 F.Supp. 407 (E.D.Pa. 1960). Although the parties were reversed in the prior proceedings, in that the former defendant is the present plaintiff, the entities before the Court are the same. For convenience they will hereafter be called Porter and Union respectively.

These controversies are connected with a certain manufacturing plant, in the Tacony section of Philadelphia, which was for many years operated by Henry Disston & Sons, Inc., a Pennsylvania corporation. That corporation, whose assets are now the property of Porter, will hereafter be called Disston. The factory in question will be spoken of as the Tacony plant.

In November, 1955, in exchange for Porter stock, Porter acquired substantially all Disston assets, subject to liabilities. Porter stresses in argument the fact that it did not acquire the stock or corporate entity of Disston. Thus, it says, there is no legal connection between Disston and Porter. As will be seen, however, that circumstance does not affect the ruling of this Court. It is well to note, however, that the bare statement "no legal connection" does not tell the whole story. At pages 11 and 12 of his opinion the arbitrator found in substance that Porter did agree to abide by the pension "plan" in the Disston agreement with the Union and to continue to pay all "pensions" theretofore paid by Disston.

Since November, 1955, Porter's "Disston Division" has operated the business of manufacturing saws and hand tools, previously carried on at the former Disston plants, including that at Tacony.

At the time Porter acquired Disston's assets, there was in effect at Disston's

Tacony plant a labor agreement between Disston and Union. Porter operated under that agreement until it expired, September 15, 1956.

Three recitals from the former opinion state further background of the reference to arbitration, United Saw Workers v. H. K. Porter, 190 F.Supp. 407, 408 (E.D.Pa.1960):

"(4) The plaintiff and defendant are parties to a collective bargaining Agreement dated September 15, 1957 and extended by a Supplemental Agreement dated September 15, 1958.

"(5) In February of 1959, the defendant announced that it intended to move a large part of its production facilities from its Tacony plant to a plant in Danville, Virginia.

"(6) Subsequent to the Company's announcement of its intent to move its plant, the Union and the Company had discussions of severance pay for employees affected and the pension rights of employees who would be laid off as a result of the move. No agreement was reached on these subjects."

In the cited opinion, it was held that these disputes were arbitrable. Appeal followed as to the form of order directing arbitration and finally, by direction of the United States Court of Appeals for the Third Circuit, the following order was issued by this Court:

"And now to wit, this 11th day of April, 1961, it is hereby ordered and decreed that the plaintiff's Motion for Summary Judgment in the above matter be, and the same is hereby Granted, and that Summary Judgment is hereby entered in favor of plaintiff, United Saw, File and Steel Products Workers of America, Federal Labor Union No. 22254, AFL–CIO, and that defendant is hereby ORDERED to conform and comply with Sections III and IV of the Collective Bargaining Agreement between itself and the plaintiff, to select an Impartial Chairman and to submit to arbitration, subject to the provisions of the Collective Bargaining Agreement, the grievances with respect to pensions and severance pay insofar as such grievances arise under the provisions of the Collective Bargaining Agreement and constitute claimed violations thereof. \* \* \*"

In due course arbitration took place, culminating in the Award of Arbitrator dated August 17, 1962. W. Roy Buchwalter, Impartial Chairman, accompanied his award with a comprehensive opinion. There has been no suggestion of any procedural informality in the arbitration proceedings which led up to the award and opinion. Plaintiff's sole objection is that it exceeded the arbitrator's authority as to the matter of pension pay.

The award, apart from formal matters, is as follows:

"*Pensions: The Arbitrator rules that:*

"1. Each employee who, at the time he was terminated, had completed twenty-five years or more of service, but had not yet reached age sixty-five, shall be paid a full pension.

"The formula for payment to be worked out by H. K. Porter Company and the Union.

"Each terminated employee shall receive a $1,000 non-contributory life insurance policy as provided for in Section XIX–A.

"2. Each employee, who at the time he was terminated had reached age sixty-five, but had not completed twenty-five years of service shall be paid a pro rata pension based on an equitable formula to be worked out by H. K. Porter Company and the Union.

"Each terminated employee shall receive a $1,000 non-contributory life insurance policy as provided for in Section XIX–A.

"3. The request for pensions for employees who, at their termination, had not yet reached age sixty-five

and who had not put in twenty-five years of service is denied.

*"Severance Pay*:

"The Union's request for severance pay is denied."

It is difficult to discuss the arguments of counsel for Porter without going into the merits of arbitration. But how this Court could go into the merits of that award without flouting the Enterprise decision, among others, is difficult to see. United Steel Workers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

The Court of Appeals for the Third Circuit has had frequent occasion to interpret the famous trilogy of decisions handed down by the United States Supreme Court in June of 1960. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Judge Staley, observing that the ink was still fresh on those opinions, noted as early as January of 1961 that by those authorities a court cannot pass on the merits of the matter claimed to be arbitrable. International Tel. & Tel. Corp. v. Local 400, etc., 286 F.2d 329 (3rd Cir. 1961) (cases collected n. 4, p. 330).

More recently, the decisions to the effect that the courts cannot look into the merits of the arbitrator's award have been multiplying in the federal courts. Textile Workers Union of America v. Cone Mills Corp., 188 F.Supp. 728, 732, 736 (M.D.N.C.1960), aff'd 290 F.2d 921 (4th Cir. 1961); Local Union No. 1241 of International Brotherhood of Electrical Workers v. Columbia Broadcasting System, Inc., 207 F.Supp. 423 (E.D.Pa. 1962); General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss and Company, Inc., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (March 18, 1963).

To attempt to catalogue the spate of recent decisions affirming the rule would unnecessarily prolong this opinion. The only question, for that matter, is whether the pension matter was within the scope of the reference to arbitration.

The plain wording of the order of reference heretofore quoted required arbitration of

" * * * the grievances with respect to pensions and severance pay insofar as such grievances arise under the provisions of the Collective Bargaining Agreement and constitute claimed violations thereof * * *."

It is to be noted that neither of the motions before this Court raise any question as to severance pay. The subject is mentioned here for the sole purpose of its bearing on the main issue: the scope of the reference to arbitration. On the severance subject the Arbitrator wrote:

"The Arbitrator in the instant case is most sympathetic to the Union's request for severance pay; however, it is his opinion that he has no power to grant the Union's request. If the Arbitrator were to grant the Union's request he would be adding to the labor agreement and therefore would be violating Section XXII–B. Such an addition can only be made by negotiations between the parties.

"Attention is again directed to the restraining words of Justice Douglas in the Enterprise Wheel and Car Corporation case: 'An arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice * * * his award is legitimate only so far as it draws its essence from the collective bargaining agreement.'

"For the reasons set forth above the Union's request with respect to severance pay is denied.

"Although the Union's request is not granted the Arbitrator strongly suggests, for humane reasons and in the interest of good industrial relations, that Company and Union representatives sit down again and make a sincere and intelligent effort to arrive at an agreement with respect to severance pay for those terminated as a result of the Danville move."

Thus the Arbitrator reluctantly denied the Union's claims for severance pay on the ground that he had no authority to make such award under the collective bargaining agreement. It is therefore abundantly clear that the Arbitrator was indeed aware of the limitations upon his authority.

As to the pension claims, he nevertheless found authorization to grant the Union demands. The Court order of reference to arbitration heretofore quoted specifies that the arbitration is to deal with grievances as to pensions insofar as covered by the collective bargaining agreement.

The positions of the Union and Porter are set out with care in the Arbitrator's opinion, commencing respectively at pages 5 and 7; then at page 9 the positions of both are summarized. His ruling on the pension phase consists of five closely written pages in his opinion commencing at page 11. To say the least for that discussion, it is in no possible sense vulnerable to attack on the ground that it is capricious or arbitrary.

Controversy centered about the following:

"Section XX, *Pensions, Paragraph C, Eligibility,* September, 1957 contract, provides: 'Basic yearly pension allowance (without Social Security) which shall be paid a retired employee who has reached the age of sixty-five with at least twenty-five years of continuous service with the Company. * * *' (Joint Exhibit #2)."

Thereafter the Arbitrator considers other provisions in the same and later contracts which bear upon the interpretation of that clause. He also takes into consideration the practice which had prevailed as to interpretation of the clause above quoted saying:

"A study of the exhibits submitted at the Arbitration hearings indicates that in numerous cases over the years, it was the practice of the Pension Board to abide by the spirit of the eligibility clause, rather than by the wording of the clause. If the Pension Board had adhered literally to the letter of the provision it would have turned down a number of requests for pensions.

\* \* \* \* \* \*

"In December, 1951, the Pension Board granted a pension to Fred Zitkovitz. The Board stated: 'Mr. Zitkovitz has broken service and does *not qualify for a pension under the 25 years continuous employment provision.* The Board, however, has made an exception in this case in view of the 37 years accumulated service and also in view of his age.' (Union Exhibit 4k)."

After reviewing about twenty cases of that nature, the Arbitrator reached the conclusion that those precedents should be followed, and wrote his award accordingly. This he had a right to do—and in so deciding, this Court arrives at the limit of its own authority. The matter of arbitrability is not an open one, having been settled several years ago. United Saw Workers v. H. K. Porter, 190 F.Supp. 407 (E.D.Pa.1960); see order of the United States Court of Appeals for the Third Circuit, No. 13439, March 24, 1961 and order of this Court April 11, 1961. This Court finds that arbitration under that authorization took place, and that the award of the arbitrator was within the scope of arbitration under the order of court heretofore cited. It is not now open to a court to reweigh the merits of the grievance. General Drivers, etc., Local Union No. 89 v. Riss and Company, 372 U.S. 517, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (March 18, 1963).

For the foregoing reasons, the Motion for Summary Judgment of plaintiff Porter is hereby denied, and the Motion for Summary Judgment of defendant Union is hereby granted, and it is so ordered.